Filed 1/22/15  P. v. Jenkins CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B255313 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. TA130942, YA079877 & YA088291) |
| v. | |
| MARVIN LENELL JENKINS, | |
| Defendant and Appellant. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Pat Connolly, Judge.  Affirmed.

Janet Gusdorff, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant, Marvin Lenell Jenkins, appeals from the judgments entered following revocation of probation previously granted in *People v. Jenkins*, Los Angeles County Superior Court case Nos. YA079877 and YA088291, and his conviction for the sale, transportation or offer to sell a controlled substance, cocaine base (Health & Saf. Code, § 11352, subd. (a)) in Los Angeles County Superior Court case No. TA130942. The trial court sentenced Jenkins to nine years four months in prison. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Case No. YA079877.*

At the preliminary hearing held on January 26, 2011, Gardena Police Officer Jesus Ugalde, "an expert on the subject of possession for sale of cocaine base and methamphetamine," testified that on December 22, 2010 he interviewed Jenkins at the police station. Jenkins had been taken into custody by a number of Gardena police officers after he had been found standing in the hallway of the Moonlight Inn, a hotel on Western Avenue in Gardena.

After waiving his rights pursuant to *Miranda*,[1] Jenkins told Ugalde he had been in one of the rooms at the hotel where he had taken three Vicodin pills. Later, when he left the room and went out into the hallway, he was "kind of high" and could not remember how he was initially contacted by law enforcement officers. "[H]is next recollection was [that] . . . officers [were] attempting to search him." Jenkins denied having been under the influence of either cocaine base or methamphetamine.

Two of the police officers who had assisted in taking Jenkins into custody told Ugalde that, at approximately 2:00 a.m. on December 22, 2010, they had gone to the Moonlight Inn and spoken with the manager, who indicated he had been having problems with individuals coming into the hotel to sell drugs. When the officers then walked down the hall, they saw Jenkins. Although he did not appear to be under the influence of methamphetamine, cocaine or cocaine base and did not exhibit the symptoms of one who

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

uses those substances, one of the officers asked Jenkins what he was doing at the hotel. Jenkins did not answer and the officer attempted to conduct a cursory pat-down search of Jenkins for weapons. When the officer then attempted to place Jenkins's hands behind his back, he noticed Jenkins was holding in the palm of his hand "a baggie containing a white rock-like substance resembling cocaine."

Jenkins began to physically resist the officer. He began to kick and hit one of the officers and the two officers together were unable to subdue him. Accordingly, one of the officers called for back-up officers. Additional officers came to the hotel and, at one point during the confrontation, Jenkins dropped two baggies to the floor. The baggies were "different sizes. One was square and one was more like a sandwich baggie, tied . . . with a knot." One of the officers recovered the baggies and, once Jenkins had been finally restrained and transported to the station, the officer took the baggies and booked them into evidence.

When they were analyzed at the police station, it was found the baggies contained eight rocks, some of which consisted of methamphetamine and some of which contained a net weight of approximately 1.80 grams of cocaine base.

After speaking with Jenkins, Ugalde formed the opinion he possessed the narcotics for the purpose of sale. Jenkins never stated he was a chronic user of either methamphetamine or cocaine and the officer did not notice Jenkins had any "chronic user cues" such as "signs of weight loss [or] burned fingertips normally caused by a hot object, like a pipe." In addition, the way the rocks had been individually cut and their relative size indicated Jenkins intended to sell them.

As a result of the evidence presented at the preliminary hearing (see *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 250), on February 9, 2011, Jenkins was charged by information with possession for sale of cocaine base, a felony (Health & Saf. Code, § 11351.5) (count 1); possession of methamphetamine, a felony (Health & Saf. Code, § 11377, subd. (a)) (count 2); resistance, obstruction and delay of a peace officer during the discharge of his or her duties, a misdemeanor (Pen. Code, § 148, subd. (a)(1)) (count 3); the assault of a special victim, a peace officer, a misdemeanor (Pen. Code,

3

§ 240) (count 4); and battery of a peace officer while the officer was engaged in the performance of his or her duties, a misdemeanor (Pen. Code, § 243, subd. (b)) (count 5). It was further alleged with regard to counts 1 and 2 that Jenkins previously had suffered six prior convictions for which he served prison terms within the meaning of Penal Code section 667.5 and had suffered a prior conviction within the meaning of the Three Strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

After the trial court denied Jenkins's motion to suppress evidence (Pen. Code, § 1538.5), then determined the evidence presented at the hearing held on his *Pitchess*[2] motion revealed nothing discoverable with regard to alleged "prior complaints of lying or fabrication" on the part of two of the arresting officers, Jenkins decided to enter pleas. The trial court indicated, if Jenkins pled guilty or no contest to each of the five counts and admitted two of the prior prison terms, the court would strike the alleged Three Strikes prior, impose a five-year sentence, suspend the sentence and grant Jenkins three years probation.

After being advised of his constitutional and other rights, Jenkins pled guilty to each of the five charges and admitted suffering two of the prior convictions for which he had served prison terms. The trial court imposed a sentence of three years in state prison for Jenkins's conviction of count 1 and two consecutive years for the prior convictions he admitted pursuant to Penal Code section 667.5. The trial court then suspended the sentence and granted Jenkins three years formal probation on the condition, among others, that he spend one year in a live-in drug treatment program. Finally, the trial court dismissed Jenkins's "strike prior."

2. *Case No. YA088291*.

In a felony complaint filed on September 3, 2013 in case No. YA088291, Jenkins was charged with possession of cocaine (Health & Saf. Code, § 11350, subd. (a)) (count 1), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) (count 2) and bringing contraband into a jail (Pen. Code, § 4573, subd. (a)) (count 3). It

---

[2]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

4

was further alleged as to all three counts Jenkins had suffered three prior convictions for which he served prison terms pursuant to Penal Code section 667.5, subdivision (b). Finally, it was alleged Jenkins had suffered two prior convictions within the meaning of the Three Strikes law. (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)

At proceedings held that same day, the trial court appointed a public defender to represent Jenkins. When Jenkins's newly appointed counsel indicated they were ready to proceed, the trial court asked Jenkins if he wished to waive his rights to a preliminary hearing and a jury trial. After Jenkins indicated he was willing to give up those rights and enter a plea, the prosecutor stated she was willing to strike one of Jenkins's "strike[s]." The trial court then addressed Jenkins and stated: "You understand the possible sentence in this case [is] . . . six years . . . which would be served in state prison because of your prior [remaining] strike." When Jenkins indicated he understood and the trial court indicated it was going to sentence him pursuant to "Prop 36," Jenkins pled "[n]o contest" to possession of cocaine as alleged in count 1 of the complaint.

After Jenkins entered his plea, the People stated they wished "to amend the complaint to allege Penal Code section 1170[, subdivision] (h)(3)[,] which . . . indicate[d] that any state prison sentence . . . [Jenkins] would have to serve would [actually] be served in . . . state prison. And that [was] because he [had] . . . [an April 15, 1997] conviction [for robbery in violation of Penal Code section 211] in case BA148743." Jenkins indicated he was willing to waive arraignment with regard to the allegation and the trial court explained to him that if he admitted having committed the crime, then violated the terms of his probation, he would be sentenced to state prison instead of county jail. Jenkins then admitted having suffered the prior conviction.

The trial court concluded Jenkins had knowingly, intelligently, freely and voluntarily entered the plea and made the admissions. Jenkins waived arraignment for judgment and the trial court suspended imposition of sentence and granted Jenkins one year of formal, unsupervised probation. Jenkins was, however, ordered to attend a six-month drug treatment program in which he was to enroll the following day. The trial court then dismissed all the remaining counts and allegations.

3. *Case No. TA130942.*

At approximately 8:00 p.m. on November 19, 2013, Los Angeles Police Department Narcotics Detective John Armando was "following up on a narcotics complaint" at the Economy Hotel on South Broadway. The complaint had indicated "a man by the name of Marvin . . . was selling rock [cocaine] and crystal meth out of a motel room there." The detective had followed a man up to the second floor of the hotel, where the man knocked on the door of room 210. Jenkins answered the door and the two men "engaged in a brief conversation." The visitor, a Mr. Allen, then walked back down the stairs to his car and a female passenger, Jacqueline Brown, got out of the car and walked up to room 210. There, Brown and Jenkins had a short conversation, at the conclusion of which Brown handed to Jenkins some money and Jenkins handed to Brown "a clear plastic bindle containing . . . cocaine base." Armando and his partner then approached Brown, who dropped the bindle and stepped on it. The detective was able to "move[] Brown off the bindle" and recover it.

Detective Armando and his partner placed Brown and Allen under arrest and transported them to the station. As the officers were arresting Brown, she spontaneously said, " 'We're just going home to get high.' "

The bindle recovered by Armando was analyzed and it was stipulated it contained .31 grams of cocaine base.

Armando and his partner returned to the hotel where they saw Jenkins speaking to another woman outside his hotel room. The officers arrested Jenkins and transported him to the jail. There, Jenkins took from his rear waistband and gave to Armando "two individually wrapped crystals" later determined to contain 2.31 grams of methamphetamine.

In an information filed December 23, 2013, Jenkins and a codefendant were charged with the sale, transportation or offer to sell cocaine base (Health & Saf. Code, § 11352, subd. (a)) (count 1) and possession for sale of methamphetamine (Health & Saf. Code, § 11378) (count 3). It was further alleged Jenkins previously had suffered a conviction for a serious or violent felony, robbery, within the meaning of Penal Code

6

section 1170, subdivision (h)(3) and Penal Code sections 667, subdivisions (b) to (i) and 1170.12, subdivisions (a) to (d), the Three Strikes law; had suffered two prior convictions pursuant to Health and Safety Code section 11370.2, subdivisions (a) and (c); and had suffered six prior convictions for which he served prison terms within the meaning of Penal Code section 667.5, subdivision (b).

4. *Probation violation proceedings.*

After hearing argument from Jenkins's counsel, the trial court indicated that in case No. TA130942, there was "absolutely no doubt, whatsoever" Jenkins possessed the methamphetamine "for sale[]." Under the circumstances, Jenkins had violated the terms of his probation in both case No. YA079877 and No. YA088291.

With regard to his probation violation in case No. YA079877, the trial court imposed the previously suspended term of three years in prison for his conviction of possession for sale of cocaine base and the two 1-year terms for his prior convictions for which he served prison terms, for a total sentence of five years. For his violation of probation in case No. YA088291, the trial court imposed the upper term of three years for his conviction of possession of cocaine, then doubled the term to six years as Jenkins had suffered a prior "strike." For his conviction of possession of methamphetamine, the trial court imposed one-third the midterm, or one year four months, the term to run consecutively to the term imposed for possession of cocaine. Finally, the trial court imposed an additional two years in prison based on Jenkins's admissions he had suffered two convictions for which he served prison terms within the meaning of Penal Code section 667.5, subdivision (b). As the term imposed for Jenkins's probation violation in case No. YA079877 was to run concurrently to that imposed for case No. YA088291, Jenkins was to serve a total of nine years four months in state prison.

With regard to both cases, the trial court awarded Jenkins a total of 402 days of presentence custody credit. The trial court then ordered Jenkins to pay a restitution fine of $300 as to each matter, for a total fine of $600 (Pen. Code, § 1202.4, subd. (b)), a stayed $300 parole revocation restitution fine for each case, or a total stayed fine of $600 (Pen. Code, § 1202.45), a $40 court operations assessment as to each case, or a total

7

assessment of $80 (Pen. Code, § 1465.8) and a $30 court construction fee as to each matter, for a total fee of $60 (Gov. Code, § 70373).

    5. *Sentencing in Case No. TA130942.*

At proceedings held on February 19, 2014, Jenkins decided to accept the People's offer with regard to a sentence in case No. TA130942. In exchange for a plea of guilty or no contest to the allegation in count 1, the sale, transportation or offer to sell cocaine base, the trial court would impose the low term of three years in prison, the term to run concurrently with the sentences imposed in case Nos. YA079877 and YA088291. All remaining counts in case No. TA130942, including the "strike," would be dismissed. Jenkins then pled no contest to the sale, transportation or offer to sell cocaine base. The trial court denied probation and sentenced Jenkins to three years in state prison, the term to run concurrently with those imposed in case Nos. YA079877 and YA088291.

As to fines and fees, the trial court imposed a $300 restitution fine, a stayed $300 parole revocation restitution fine, a $50 laboratory analysis fee (Health & Saf. Code, § 11372.5, subd. (a)), a $40 court security fee and a $30 court construction fee. After the trial court indicated the fines would be deducted from Jenkins's prison earnings, the court awarded Jenkins a total of 188 days of presentence custody credit and dismissed the remaining counts.

Jenkins's notice of appeal, filed in this court on March 25, 2014, was accepted on May 27, 2014, pursuant to an order issued by the Administrative Presiding Justice.

## CONTENTIONS

After examination of the record, counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record.

On October 8, 2014, counsel for Jenkins advised him that he had the right to personally submit within 30 days any contentions, grounds of appeal or arguments he wished this court to consider. No response has been received to date.

**REVIEW ON APPEAL**

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities. (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

**DISPOSITION**

The judgments are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                                    KITCHING, J.


We concur:


EDMON, P. J.




ALDRICH, J.

9